**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEROME KEELEN, et al.,

    Plaintiffs,

v.

QBE INSURANCE CORPORATION,

    Defendant.

Civil Action No. 13-6941(MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter arises from an insurance claim for property damage caused by Superstorm Sandy. (*See generally* Compl., ECF No. 1.) Plaintiffs Jerome Keelen ("Mr. Keelen") and Carol Kienbaum (collectively, "Plaintiffs") submitted an insurance claim (the "Claim") to Defendant QBE Insurance Corporation ("QBE" or "Defendant") for damage to their residential property, located at 8 Ninth Avenue, Ortley Beach, New Jersey (the "Premises"). (*Id.* ¶¶ 6, 9.) Defendant denied coverage on the Claim, and thereafter, Plaintiffs filed a Complaint against Defendant alleging claims for breach of contract and breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 13-23.) This matter comes before the Court on Defendant's Motion for Summary Judgment. (ECF No. 19.) Plaintiffs filed opposition (ECF No. 23), and Defendant replied (ECF No. 24). The Court, having considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. Defendant's Motion for Summary Judgment is granted.

I.  **Background**

At some point before Superstorm Sandy, Plaintiffs obtained an insurance policy (the "Policy") from Defendant to cover losses to the dwelling and personal property on the Premises. (Def.'s Statement of Undisputed Fact ("SOF") ¶¶ 1, 46-48, ECF No. 19-2; Pls.' Response to Def.'s SOF ("Pls.' SOF Response") ¶¶ 1, 11, ECF No. 23.) The Policy did not cover property damage from floods. (Def.'s SOF ¶ 50; Pls.' SOF Response ¶ 11.) In addition, the Policy included an "exclusion for damage arising out of 'Water'," and "Water" was defined under the policy to include, inter alia, "[w]aterborne material carried or otherwise moved by any of the water [from flood, surface water, waves, including tidal wave[s] . . . tidal water, overflow of any body of water . . . all whether or not driven by wind, including storm surge]." (Def.'s SOF ¶ 49; Pls.' SOF Response ¶ 11.) Furthermore, the Policy provided that the Defendant does not insure for "loss caused directly or indirectly" by any of the excluded causes, and that "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Def.'s SOF ¶ 49; Pls.' SOF Response ¶ 11.)

On October 29, 2012, Superstorm Sandy caused substantial damage to the dwelling on the Premises. (Def.'s SOF ¶ 7, Pls.' SOF Response ¶ 3.) On November 6, 2012, Plaintiffs submitted a claim for wind damage to the dwelling (the "Claim") to Defendant. (Def.'s SOF ¶ 9; Pls.' SOF Response ¶ 3.) Thereafter Defendant investigated the Claim and determined that wind damage accounted for only $526.18 of the damages to the dwelling. (Def.'s SOF ¶ 12; Pls.' SOF Response ¶ 3.) Defendant asserted that "[i]n addition to wind damage, [the dwelling] also suffered damages as a result of flood" and "[t]his portion of your damage is not covered under the [P]olicy." (Def.'s SOF, Ex. G at 1, ECF No. 19-8.) As Defendant found that the amount of

wind damage was below the Policy's $3,510.00 deductible, Defendant denied Plaintiffs' Claim. (*Id.*)

Thereafter, Mr. Keelen submitted correspondence requesting that Defendant reconsider its coverage position. (Def.'s SOF, Ex. H, ECF No. 19-8.) Specifically, Mr. Keelen refuted Defendant's conclusion that the damage to the dwelling was caused by "water damage" and asserted that "the damage to [the dwelling], which was built in 2005 to FEMA elevation and modern foundation code requirements, was caused by [the] massive impact of the house next door." (*Id.* at 1.) In response to this correspondence, Defendant retained Rimkus Consulting Group, Inc. ("Rimkus"), an engineering company, to determine the cause of the damage to the dwelling on the Premises. (Def.'s SOF ¶ 17; Pls.' SOF Response ¶ 4.) After its inspection of the dwelling, Rimkus concluded, inter alia, that "[t]he [dwelling's] foundation had fallen to the northwest. . . . The cause of the foundation failure was due to buoyant forces uplifting the house combined with lateral forces including hydrodynamic wave forces and impact force of the displaced adjacent house." (Def.'s SOF, Ex. J at 2, ECF No. 19-8.) Furthermore, Rimkus found that "[t]he [dwelling] presented none of [the] precursors to structural wind damage. The [dwelling] had only one small area of observable wind related damage. A portion of the fascia along the front of the house was missing. No other wind damage was found." (*Id.* at 7.) Based on this report, QBE maintained its position denying coverage on Plaintiffs' Claim. (Def.'s SOF ¶ 24; Pls.' SOF Response ¶ 6.)

Thereafter, Plaintiffs retained Structural Workshop LLC to "investigate the conditions" of the Premises and to opine as to cause of the damage to the dwelling. (Def.'s SOF, Ex. M, ECF No. 19-9.) Following its investigation of the Premises, Structural Workshop LLC issued a report stating, inter alia, that "[t]here is no question that there was a significant impact [from the

3

house next door to the dwelling]. This impact is clearly responsible for a significant portion of the damage, movement and dislodgement of [the dwelling]." (*Id.*) The report did not, however, opine as to "how the neighbor's residence (Number 6) was caused to impact the [the dwelling] (Number 8.)." (Def.'s SOF ¶ 30; Pls.' SOF Response ¶ 7.) Plaintiffs sent this report to Defendant. (Def.'s SOF ¶ 36; Pls.' SOF Response ¶ 9.)

In correspondence dated April 30, 2013, Defendant stated:

> We have reviewed the materials you provided . . . including but not limited to the report from Structural Workshop LLC dated February 13, 2013. We are writing to advise, based upon a review of these materials as well as the terms of the [P]olicy, that QBE . . . maintains its prior denial of coverage for any and all losses sustained by you at the [Premises] as a result of Superstorm Sandy . . . As indicated previously, the damages sustained by your client in the course of the storm as a result of "flood" as defined by the [P]olicy are excluded from coverage.

(Def.'s SOF, Ex. P, ECF No. 19-9.) In particular, Defendant asserted that "the exclusion specifically denies coverage for damages attributable to water-borne material which would encompass damage caused by the neighboring structure striking your home." (*Id.* at 2.) Thereafter, Plaintiffs filed a Complaint alleging that Defendant's denial of coverage constituted a breach of the Policy and a breach of the covenant of good faith and fair dealing. (*See generally* Compl.) Defendant now moves for summary judgment on these claims.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no genuine [dispute] of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)) (internal quotation marks omitted). If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III. Analysis**

In its motion, Defendant argues that summary judgment in favor of QBE is warranted because it is undisputed that storm surge caused damage to the dwelling and "the [Policy]

5

excludes coverage for damages 'caused directly or indirectly' by storm surge, 'regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Def.'s Moving Br. 2, 4-5, ECF No. 19-3.) In opposition, Plaintiffs neither dispute nor concede that damage was caused by storm surge. Rather, Plaintiffs argue that the Policy's exclusion provision is ambiguous. (Pls.' Opp'n Br. 5, ECF No. 23.) In particular, Plaintiffs argue that it is unclear whether the term "material" in the exclusion for damage caused by "waterborne material" includes the "intact entirety of the Keelen's neighbor's structure." (*Id.* at 5-7.) In its reply, Defendant, however, argues that the meaning of "waterborne material" is "completely irrelevant" because the "[w]ater exclusion [in the Policy] applies to any one of four types of occurrences, only one of which implicates anything that has to do with the waterborne material." (Def.'s Reply Br. 3-4, ECF No. 24.) Importantly, even leaving aside the exclusion for waterborne material, the Policy excludes from coverage damage caused by, inter alia, "[f]lood, surface water, waves, including tidal wave . . . overflow of any body of water . . . all whether or not driven by wind, including storm surge." (*Id.* at 3.) Thus, noting that Plaintiffs have not refuted the evidence that Defendant presented to show that storm surge contributed to the damage to the dwelling, Defendant argues, that the "anti-concurrent causation clause" in the Policy bars coverage on Plaintiffs' Claim. (*Id.* at 4.) The Court agrees.

As Plaintiffs concede, anti-concurrent causation clauses have been upheld in New Jersey by both federal and state courts. (Pls.' Opp'n Br. 10); *see Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 354 (D.N.J. 1999); *Petrick v. State Farm Fire & Cas. Co.*, L-43-07, 2010 WL 3257894, at *7 (N.J. App. Div. Aug. 13, 2010). Pursuant to the "anti-concurrent causation clause" in the Policy, the Policy does not cover "loss caused directly or indirectly by [storm surge]." (Certification of Richard J. Ahn ("Ahn Cert."), Ex. R at 11, ECF No. 19-11.)

6

Furthermore, "[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (*Id.*) Relying on the anti-concurrent causation clause in the Policy, Defendant argues that there is no genuine dispute for trial, because it has "proven that the loss was caused by flood/storm surge." (Def.'s Moving Br. 4.) In support of its motion for summary judgment, Defendant presented a report from its causation expert, Engineering Design & Testing Corporation, which concluded that "[t]he cause of damage to [Plaintiffs' dwelling], including the removal and relocation of the dwelling from the foundation, was impact, hydrostatic, and buoyant forces, including impact forces generated from waterborne debris such as the neighboring dwelling(s), due to tidal wave storm surge from the Atlantic Ocean, during Hurricane Sandy." (Ahn Cert., Ex. Q at 18, ECF No. 19-10). Defendant also submitted a report from Rimkus, which similarly concluded that "[t]he cause of the [Plaintiffs' dwelling] foundation failure was due to buoyant forces uplifting the house combined with forces including hydrodynamic wave forces and impact force of the adjacent house." (Ahn Cert., Ex. J at 2, ECF No. 19-8.) Based on this evidence, the Court finds that Defendant has satisfied its initial burden of showing the absence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. Thus, the burden shifts to Plaintiffs to "set forth specific facts showing that there is a genuine [dispute] for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. 56(e)). Plaintiffs have not satisfied this burden.

In opposition to the motion for summary judgment, Plaintiffs have not offered any evidence showing that storm surge did not, at least indirectly, cause the losses at issue. Indeed, Mr. Keelen's deposition testimony is consistent with the theory that storm surge indirectly caused the loss. (Ahn Cert., Ex. B 124:1-23, ECF No. 19-5.) In particular, in response to the

question "what did you believe happened to your neighbor's house that caused it to crash into yours," Mr. Keelen responded that the house could have been pushed by water. (*Id.* at 124:5-13.) Thus, Plaintiffs have not offered even a scintilla of evidence showing that there is any dispute as to whether storm surge, at least indirectly, caused the subject losses. *See Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (stating that to defeat a motion for summary judgment the non-moving party must introduce more than a scintilla of evidence showing that there is a genuine dispute for trial); *see also Matsushita Elec. Indus.*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Therefore, pursuant to the anti-concurrent causation clause in the Policy, the Policy does not cover Plaintiffs' Claim for property damage. Accordingly, Defendant's denial of coverage does not constitute a breach of contract or a breach of the covenant of good faith and fair dealing.

## IV.    Conclusion

For the reasons set forth above, and for other good cause shown, Defendant's Motion for Summary Judgment is granted.

s/Michael A. Shipp  
**MICHAEL A. SHIPP**  
**UNITED STATES DISTRICT JUDGE**

8